UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON LEWIS,

                         Plaintiff,                Civil Action No. 20-13022

v.                                    Stephanie Dawkins Davis
                                    United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,               David R. Grand
                                    United States Magistrate Judge

                         Defendant.

_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 17)**

Plaintiff Leon Lewis ("Lewis") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Lewis is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, Lewis' Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the

ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Lewis was 44 years old at the time of his application date of March 22, 2018,[1] and at 5'6" tall weighed approximately 135 pounds.  (PageID.126, 296).[2]  He completed eleventh grade but had no further education.  (PageID.74, 297).  Previously, he worked as a disc jockey, but he stopped working in 2008 or 2009 when he contracted an infection.  (PageID.75, 296-97).  He now alleges disability as a result of neck and back pain (with numbness and weakness in his arms and legs), dizziness, recurring infections, headaches, and bipolar disorder.  (PageID.74, 76, 78, 80-82, 307).

After Lewis' application for SSI was denied at the initial level on August 8, 2018 (PageID.147-51), he timely requested an administrative hearing, which was held on September 12, 2019, before ALJ Kevin Fallis (PageID.70-101).   Lewis, who was represented by attorney Samantha Ball, testified at the hearing, as did vocational expert ("VE") Stephanie Leech.  (*Id.*).  On February 26, 2020, the ALJ issued a written decision finding that Lewis is not disabled under the Act.  (PageID.52-64).  On September 8, 2020, the Appeals Council denied review.  (PageID.36-40).  Lewis timely filed for judicial review of the final decision on November 12, 2020.  (ECF No. 1).

---

[1] Lewis had filed previous applications for SSI, the last one alleging disability beginning on August 20, 2013.  (PageID.105).  On July 6, 2017, ALJ Regina Sobrino issued a written decision finding that Lewis was not disabled under the Act.  (PageID.105-15).  On January 26, 2018, the Appeals Council denied review of this decision.  (PageID.120-24).

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 10.

The Court has thoroughly reviewed the transcript in this matter, including Lewis' medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

3

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Lewis is not disabled under the Act.  At Step One, the ALJ found that Lewis has not engaged in substantial gainful activity since March 22, 2018 (the application date).  (PageID.54).  At Step Two, the ALJ found that he has the severe impairments of degenerative disc disease of the cervical and lumbar spine; radiculopathy; migraine headaches; hearing loss; tinnitus; bipolar disorder; depression; anxiety disorder; and substance use disorder.  (*Id.*).  At Step Three, the ALJ found that Lewis' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.55).

The ALJ then assessed Lewis' residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: no climbing ladders, ropes or scaffolds; no crawling; occasional climbing of stairs, crouching, stooping, balancing, and kneeling; no overhead reaching; limited to jobs that can be performed while using a handheld assistive device required for uneven terrain or

ambulation; limited to up to a moderate noise level and occupations that do not require frequent telephone communication; no work around hazards, such as unprotected elevations or dangerous moving machinery; no driving as a work duty; limited to simple, routine, 1-2 step tasks not done at a production rate pace (i.e., no assembly line work), with minor changes in the work setting; and no work that requires interaction with the public. (PageID.57).

At Step Four, the ALJ found that Lewis has no past relevant work. (PageID.62). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Lewis is capable of performing the jobs of bench assembler (50,000 jobs nationally), office clerk (60,000 jobs), and sorter (40,000 jobs). (PageID.63). As a result, the ALJ concluded that Lewis is not disabled under the Act. (*Id.*).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art ...." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted).

"And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence … is 'more than a mere scintilla.'"   *Id.* (internal citations omitted).   Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.   *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.   *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.   *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

As set forth above, the ALJ found that Lewis has the RFC to perform a reduced range of light work.   (PageID.57).   In reaching this conclusion, the ALJ reviewed and

discussed the relevant evidence, and his assessed RFC finds support in the medical record. Lewis' arguments before this Court center on his alleged headache symptoms, as well as his belief that the ALJ should have assessed greater off-task limitations and a sit/stand option.  Each of these arguments is addressed below.

### 1.   Lewis' Complaints of Headache Symptoms

With respect to Lewis' reported headache symptoms, the ALJ reasonably concluded that the medical record shows that his "pain, headaches, and other conditions were generally well managed with conservative, routine treatment, such as monthly visits with a primary care physician and physical therapy in August and September 2018, as well as physical therapy in August and September 2019[.]"  (PageID.58 (citing PageID.557-687, 712-29)).  Indeed, none of these numerous records report Lewis as indicating the type of frequency or extreme severity he alleged during his testimony before the ALJ, that "[a]t least two days a week" he experienced headaches so severe that he spent the entire day in bed.  (ECF No. 94-95).  Relatedly, although Lewis did regularly complain about headaches to doctors, the records cited by the ALJ routinely indicate that Lewis was in no acute distress, had normal attention span and concentration, was alert and fully oriented, and had normal range of motion, extremity strength, and gait (without assistive devices).  (*e.g.*, PageID.558, 561, 563, 566, 591, 596-97, 599-600, 603-04, 611-12, 714).  The ALJ also pointed to a February 2018 MRI of Lewis' brain, which showed a stable clivis hemangioma, as compared to MRIs performed in 2013 and 2014, and no other abnormalities.  (PageID.59, 368-69, 644).  And, a May 4, 2018 record indicates that Lewis was diagnosed with "nonintractable headache," and that he was discharged for "home or

self care." (PageID.381).  Moreover, the ALJ considered and discussed Lewis' wide range of daily activities – including cooking, performing household chores, spending time with friends, caring for his dogs, playing video games, watching documentaries, and working on model cars – finding that such activities are not consistent with the frequency and debilitating nature of the headaches alleged by Lewis.  (PageID.60 (citing PageID.89-93, 307-14, 516-20, 523)).  Indeed, whereas Lewis contends that his headaches severely affect his concentration, many of these activities necessarily require a good degree of concentration.

In evaluating Lewis' headaches, the ALJ also was persuaded by the findings of the two state agency reviewers – Robin Mika, D.O. and Rom Kriauciunas, Ph.D. – who reviewed Lewis' medical and other records in August 2018 and assessed limitations consistent with those adopted by the ALJ.  (PageID.60-61, 135-41).  Among other physical and mental impairments, Drs. Mika and Kriauciunas considered Lewis' headaches, as well as related symptoms of pain, dizziness, fatigue, and loss of concentration, but found those symptoms only partially supported by the record evidence.[3]  (PageID.126-41).  Generally speaking, ALJs are permitted to rely on state agency opinions when they are well-supported by relevant evidence, including the objective findings of a plaintiff's treating and examining providers.  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015).  Where, as here, no other physician provided a comprehensive opinion regarding

---

[3] In reaching their conclusions, Drs. Mika and Kriauciunas considered the results of examinations conducted by Matthew Dickson, Ph.D. (the psychological consultative examiner) and Scott Lazzara, M.D. (the physical consultative examiner), neither of whom opined that Lewis required additional limitations due to his migraine headaches.  (PageID.128, 135-36, 516-19, 523-27).

Lewis' workplace limitations,[4] the opinions of Drs. Mika and Kriauciunas provide substantial evidence in support of the ALJ's RFC finding. *See Al-Saidie v. Comm'r of Soc. Sec.*, No. 16-10471, 2017 WL 3633126, at \*6 (E.D. Mich. Feb. 24, 2017) ("Absent functional assessments from treating doctors, RFC assessments from medical reviewers is the best evidence of plaintiff's abilities and limitations.").

In his motion for summary judgment, Lewis argues that the ALJ failed to comply with Social Security Ruling ("SSR") 19-4p, 2019 WL 3996816 (Aug. 26, 2019), in "failing to account for limitations which stem form [sic] [his] migraine headaches …." (ECF No. 13, PageID.869). In advancing this argument, Lewis suggests that SSR 19-4p requires that a special technique be used when evaluating the functional limitations attendant to headaches. (*Id.*, PageID.869-70). But the premise of Lewis' argument if flawed because SSR 19-4p merely requires an adjudicator to "consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. ... Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, 2019 WL 3996816, at ¶ 9. Thus, SSR 19-4p's requirements are consistent with – and nearly identical to – the guidance provided in SSR 96-8p for evaluating the functional limitations resulting from *all* impairments:

> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must: [1] Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal

---

[4] The only medical opinion of record that assesses greater functional limitations is that of Khalid Ahmed, M.D., who saw Lewis only twice and based his assessment of Lewis' limitations only on his cervical degenerative disc disease – not on migraine headaches or any other impairment – as discussed *infra* at 12-13.

> observations, if appropriate; [2] Include a resolution of any
> inconsistencies in the evidence as a whole; and [3] Set forth a logical
> explanation of the effects of the symptoms, including pain, on the
> individual's ability to work.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Accordingly, Lewis cannot succeed in

arguing that SSR 19-4p places an *additional* burden on the ALJ over and above that which

is already required by SSR 96-8p in assessing limitations stemming from his headaches.

When discussing the underlying medical record, Lewis focuses primarily on his

complaints to providers (as well as a portion of his hearing testimony), rather than objective

or clinical findings.  (ECF No. 13, PageID.870-71).  The only objective findings he cites

are three imaging studies – an x-ray and an MRI of the cervical spine (from June 2017 and

May 2018), showing moderate degenerative changes, but no "cord signal abnormality,"

and a February 2018 cranial MRI, showing a stable intraosseous focal lesion but no

intracranial acute findings.  (*Id.*, PageID.870-71 (citing ECF No. 10, PageID.369, 382-83,

388)).  But the imaging studies cited by Lewis were reviewed and considered by the state

agency physicians when assessing his RFC, as well as by the ALJ in the decision.

(PageID.58-59, 132).  Moreover, Lewis makes no effort to link these diagnostic findings

to his alleged headache symptoms, nor is any such link apparent from the imaging results

themselves.  *See Flowers v. Comm'r of Soc. Sec.*, No. 14-CV-12449, 2015 WL 4274961,

at *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan

reports provide no insight into what additional limitations Plaintiff may suffer from based

on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate

with regard to any possible limitations related to his neck").  Thus, Lewis' mere citation to

these diagnostic findings does not compel a conclusion that additional limitations should have been assessed as a result of his headaches.

Lewis next argues that the ALJ erred in failing to consider the "severe side effects" of medication used to treat his headaches. (ECF No. 13, PageID.871-83). Specifically, Lewis claims that he "experienced worsening of headaches" and "dizziness, fatigue, and a feeling of being 'spaced out'" when taking Topamax/topiramate, as well as "upset stomach" when taking Motrin. (*Id.*, PageID.872). While the ALJ might not have explicitly referenced these alleged medication side effects in his decision, he clearly considered them, as he engaged in extensive questioning on this point at the administrative hearing. (PageID.77-78). At the hearing, Lewis did not mention Motrin,[5] but he testified that a recently prescribed headache medication – presumably Topamax – "caused really bad side effects" including being "a literal zombie[,]" so he "quit taking those[.]" (*Id.*). The medical records support this assertion: in August 2018, Lewis treated with Jennifer Gamble, ANP, and reported that he "discontinued Topamax shortly after starting it, due to intolerance of side effects." (PageID.557). But, because Lewis stopped taking that medication almost immediately after it was prescribed, the ALJ had no obligation to consider its side effects in determining Lewis' ultimate RFC. *See, e.g., Henderson v. Saul*, No. 4:19-cv-2438, 2020 WL 4607366, at *4 (S.D. Tex. June 10, 2020) (finding no error in the ALJ's failure to discuss medication side effects where, in relevant part, "the record shows that when

---

[5] Even if he had testified as to side effects from Motrin, Lewis does not explain how an alleged "upset stomach" from a medication taken only once every six hours requires additional, work-preclusive limitations. (ECF No. 13, PageID.872; ECF No. 10, PageID.314, 720-21).

Henderson suffered from medication side effects, she reported them to her physicians and the medications causing those side effects were discontinued"). Thus, absent evidence that Lewis reported significant side effects of medications he was prescribed and regularly taking, he cannot meet his burden of showing that the ALJ erred in failing to include side-effect-related limitations in the RFC assessment. *See French v. Comm'r of Soc. Sec.*, No. 15-12687, 2016 WL 3951419, at *13 (E.D. Mich. June 30, 2016) ("While the ALJ was obligated to 'consider' the side effects of French's medication, he was not obliged to specifically mention that finding in the decision."). For all of these reasons, Lewis has not established that his migraine headaches required greater RFC limitations than those imposed.

2. *Lewis' Cervical Degenerative Disc Disease*

In addressing Lewis' alleged symptoms of numbness and weakness in his legs, as well as dizziness and loss of balance, the ALJ relied on the mild-to-moderate diagnostic findings discussed above, as well as Lewis' conservative treatment, extensive daily activities, and numerous physical examinations conducted by multiple providers showing "generally normal neurological, respiratory, cardiac, and musculoskeletal findings, including, but not limited to lungs clear to auscultation with no crackles, rhonchi, or wheezing; regular heart rate and rhythm; normal sensation; normal reflexes; normal coordination; normal strength; normal extremity alignment and mobility; and normal tone[.]" (PageID.59 (citing PageID.351, 448-49, 460, 478, 558, 561, 563, 566, 591-671, 705, 709, 715, 717)). A review of these records shows that the ALJ has reasonably characterized them, and his reliance on these benign objective findings was entirely

appropriate.  *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018) (finding treatment notes showing normal muscle tone and strength to be substantial evidence that the claimant could perform the standing and walking requirements of light work).

Lewis does not analyze this specific evidence as it relates to the RFC adopted by the ALJ, nor does he point to any portions of the medical record that the ALJ failed to consider. (ECF No. 13, PageID.873-76).  Instead, he argues that the ALJ should have included a sit/stand option in the RFC, assessed work-preclusive absenteeism/time-off-task limitations, and more generally credited the medical opinion of Khalid Ahmed, M.D.  (*Id.*). It is true that, on August 14, 2019, Dr. Ahmed completed a Medical Source Statement, in which he relied on a diagnosis of cervical degenerative disc disease at the C5-C6 levels, along with back and neck pain, to assess work-preclusive functional limitations, including being off-task 25% or more of the workday and standing/walking less than two hours in an eight-hour workday.  (PageID.758-61).  To begin with, however, Dr. Ahmed's opinion as to Lewis' time off-task is not a *medical* opinion.  *See Morgan v. Comm'r of Soc. Sec.*, No. 15-12988, 2016 WL 5402940, at *9 (E.D. Mich. July 15, 2016) (prediction that claimant will miss work or be off task is not a medical opinion entitled to deference).  Moreover, Lewis simply relies on Dr. Ahmed's assessed limitations without any mention of the reasons articulated by the ALJ for discounting those limitations, namely that they:

> … are not consistent with or supported by the totality of the medical evidence of record, including, but not limited to objective findings on physical examinations throughout the record, including those noted by Dr. Ahmed.  Notably, the treatment records show that [Lewis] first saw Dr. Ahmed on June 21, 2019.  [Lewis'] physical examination at

13

that visit, as well as a visit in July 2019 with Dr. Ahmed revealed cervical back pain on exam, but otherwise he had normal physical and psychiatric findings. There were no significant abnormal findings reported by Dr. Ahmed in those two treatment notes.[6]

(PageID.61 (footnote added)). Given that Lewis has not demonstrated any error in the ALJ's evaluation of Dr. Ahmed's opinion, he has not established that inclusion of additional limitations in the RFC assessment was warranted. As such, this argument fails.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, Lewis' Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: February 7, 2022                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2);

---

[6] Indeed, the *only* positive finding recorded in both of Lewis' visits to Dr. Ahmed's practice is that he "exhibited pain" in his neck. (PageID.722, 727).

E.D. Mich. L.R. 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 7, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager